STATE ex rel. GENERAL ELECTRIC
COMPANY, Relator,

v.

The Honorable Gary M. GAERTNER,
Judge of the Circuit Court of the City
of St. Louis, Mo., Respondent.

No. 64787.

Supreme Court of Missouri,
En Banc.

March 20, 1984.
Rehearing Denied April 16, 1984.

Donovan S. Robertson, St. Louis, for relator.

Evans & Dixon, Gerre S. Langton, Edward Meyer, St. Louis, for respondent.

WELLIVER, Judge.

This is an action in prohibition brought by relator General Electric Co., (General Electric) challenging an attempt by Hussmann Refrigerator Co. (Hussmann) to implead it as a third party defendant in a suit pending against Hussmann. The issue

presented is whether a defendant in a pending tort action can implead a third party defendant after the statute of limitations has run in the underlying suit. This Court issued a provisional writ prohibiting respondent circuit judge from proceeding further in the underlying suit pending resolution of this question. We now quash our provisional writ.

Goldes Department Store, Inc. (Goldes) brought suit for damages against Hussmann in July 1978 alleging that a fire at its store in St. Louis County on April 29, 1974, resulted from a defective electric fluorescent light fixture that had been designed, manufactured, supplied and sold by Hussmann's predecessor. In July 1981, approximately seven years and three months after the fire, and three years after the filing of the underlying action, Hussmann initiated a third party action against General Electric. Hussmann averred that in the event it was adjudged liable to Goldes, it was because of General Electric's design and manufacture of a defective component of the light fixture. Hussmann requested the court to apportion the relative fault between it and General Electric should it be held liable.

General Electric then filed a motion for summary judgment. After respondent denied the motion, General Electric filed a petition for a writ of prohibition with this Court and we issued a provisional writ.

General Electric has raised two points in this proceeding. First, it contends that the statute of limitations applicable to Goldes' claim, § 516.120(4), RSMo 1978,[1] also is applicable to any third party action brought ancillary to the plaintiff's claim pursuant to *Missouri Pacific Railroad Co. v. Whitehead & Kales Co.*, 566 S.W.2d 466 (Mo. banc 1978), and that Hussmann's suit is barred since it was not initiated within this statutory period. Second, General Electric contends Hussmann's third party suit is barred by laches.

## I

This Court has not resolved the issue of whether a third party plaintiff seeking contribution under the doctrine of *Whitehead & Kales* may implead a third party defendant under Rule 52.11(a) after the statute of limitations has expired on the claim asserted by the original plaintiff. General Electric urges us to bar third party practice in this situation. It contends that liability for contribution as established by *Whitehead & Kales* arises from the parties' common tort liability; that the legislature in § 516.120(4) restricted the period for tort liability to five years; and, that we will circumvent the intent of § 516.120(4) unless we bar third party suits arising from a tort claim initiated after expiration of the five year statutory period.

In *Whitehead & Kales* we held that a tortfeasor sued by an injured party has the substantive right to obtain a relative apportionment of damages among all tortfeasors, whether or not they were named as defendants in the plaintiff's suit. The practical effect of the holding was the creation of a new cause of action which expanded the right to contribution among joint tortfeasors. Prior to *Whitehead & Kales*, the only right to contribution among tortfeasors was that granted by § 537.060, RSMo Cum.Supp.1983, providing for contribution among tortfeasors who were "[d]efendants in a judgment." *See Crouch v. Tourtelot*, 350 S.W.2d 799, 803 (Mo. banc 1961); *State ex rel. McClure v. Dinwiddie*, 358 Mo. 15, 213 S.W.2d 127, 131 (Mo. banc 1948). This statutory right to contribution was available only after the entry of judgment against the defendants. In addition to authorizing contribution from tortfeasors whom the plaintiff had not sued, *Whitehead & Kales* permitted enforcement of the right to contribution in the plaintiff's original action by means of impleader under Rule 52.11(a). The rule provides, in part:

> At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and petition to be served upon a person not a party to the action who is or may be

---

**1.** All references are to RSMo 1978 unless otherwise indicated.

liable to him for all or part of the plaintiff's claim against him.

Our subsequent decision in *Safeway Stores, Inc. v. City of Raytown*, 633 S.W.2d 727 (Mo. banc 1982), held that the right to contribution also could be enforced in a separate suit after judgment has been entered in the original suit. There was no need for us to decide what statute of limitations applied to actions for contribution or when the statute commenced to run in either *Whitehead & Kales* or *Safeway*. In *Whitehead & Kales* the question of the appropriate statute of limitations was not addressed by the Court and in *Safeway* the underlying statute of limitations had not run at the time of commencement of the separate suit for contribution.

█ General Electric's contention that we should measure the statute of limitations applicable to the cause of action created by *Whitehead & Kales* from the time the plaintiff's claim accrues reflects a basic misconception of both the nature of a third party claim and our decision in *Whitehead & Kales*. It is well established in case law that the cause of action asserted by a third party plaintiff, whether based on contribution, indemnification or some other theory of recovery, is separate and distinct from the tort claim asserted by the plaintiff against the defendant. *See, e.g., Doall v. Michigan Consolidated Gas Co.*, 23 Mich. App. 454, 179 N.W.2d 26, 27–28 (1970); *Blum v. Good Humor Corp.*, 57 App. Div.2d 911, 394 N.Y.S.2d 894, 896 (1977); *McKay v. Citizens Rapid Transit Co.*, 190 Va. 851, 59 S.E.2d 121, 123–24 (1950); *State Farm Mutual Auto Ins. Co. v. Schara*, 56 Wis.2d 262, 201 N.W.2d 758, 759 (1972); 3 Moore's Federal Practice § 14.09 (2d ed.); Annot. 57 A.L.R.3d 927, 929 (1974). In cases such as the one we have before us, virtually all jurisdictions hold that the third party plaintiff's claim arises, and the statute of limitations commences to run, at the time the defendant in the original suit pays more than his or her proportionate share of an adverse judgment. *See generally* Annot., 57 A.L.R.3d

867, 875–77 (1974). *See also Simon v. Kansas City Rug Co.*, 460 S.W.2d 596, 600 (Mo.1970). The foregoing does not mean, however, that the third party action is barred until the defendant pays more than his or her proportionate share of the judgment. Like its counterpart in the Federal Rules of Civil Procedure, Rule 14(a), our Rule 52.11(a) serves to "accelerate the right to contribution among joint tortfeasors even though such right is 'inchoate, unascertainable and contingent until [the joint tortfeasor] pays more than his proportionate share of the common liability.' " 3 Moore's Federal Practice § 14.08 at 14–52 (2d ed.), *quoting Bosin v. Minneapolis, St. Paul & Sault Ste. Marie R.R. Co.*, 183 F.Supp. 820, 823 (E.D.Wis.1960). *See also Glens Falls Indemnity Co. v. United States*, 229 F.2d 370, 373 (9th Cir.1955); *Markvicka v. Brodhead-Garrett Co.*, 76 F.R.D. 205, 207 (D.Neb.1977).

The wording of Rule 52.11(a) clearly contemplates no time limitation upon the right to file the third party proceeding. "At any time after commencement of the action" is but another way of saying "during the pendency of the action." Moreover, *Safeway* held that a defendant may enforce his or her claim for contribution by separate suit after judgment in the original suit. Recognition of the right to contribution after judgment tacitly assumes the existence of an inchoate right to contribution during the pendency of the action.

The drafters of the Uniform Comparative Fault Act [2] address enforcement of the right to contribution and the time within which the action shall be commenced. In *Gustafson v. Benda*, 661 S.W.2d 11 (Mo. banc 1983) we stated that insofar as possible we would follow the Uniform Act in the implementation of comparative fault in Missouri. Section 4(a) of that act provides:

A right of contribution exists between or among two or more persons who are jointly and severally liable upon the same indivisible claim for the same injury, death, or harm, *whether or not judg-*

---

**2.** 12 U.L.A. 35 (Supp.1983), reprinted in *Gustaf-* *son v. Benda*, 661 S.W.2d 11 (Mo. banc 1983).

*ment has been recovered against all or any of them. It may be enforced either in the original action or by a separate action brought for that purpose.* The basis for contribution is each person's equitable share of the obligation, including the equitable share of a claimant at fault, as determined in accordance with the provisions of Section 2.

(Emphasis added.) Clearly, the drafters of the Uniform Comparative Fault Act did not intend to bar third party suits during the pendency of the underlying action when they provided in § 5(c) that the separate action to enforce contribution could be filed at any time within one year after judgment in the original underlying action.

■■■ The provision in the Uniform Comparative Fault Act being compatible with our Rule 52.11(a) and our prior holdings in *Whitehead & Kales* and *Safeway*, we now hold that a tortfeasor may seek to enforce his or her right to obtain a relative apportionment of damages by means of third party practice as authorized by Rule 52.11(a) during the pendency of the original plaintiff's timely filed suit, whether or not the statute of limitations has expired on the original claim of the plaintiff.[3]

## II

General Electric next contends that Hussmann's suit is barred by laches. Initially, we question whether the equitable remedy of laches is available against a cause of action, such as Hussmann's, which is grounded in law. *See Safeway Stores, Inc. v. City of Raytown*, 633 S.W.2d at 730;

*UAW–CIO Local #31 Credit Union v. Royal Insurance Co., Ltd.*, 594 S.W.2d 276, 281 (Mo. banc 1980). We need not decide this question at this time, however, because we must reject General Electric's contention for another reason.

■■■ In view of our holding that the third party action may be filed at any time during the pendency of the underlying action, General Electric will not be heard to assert laches prior to the judgment in the underlying action which finally fixes the right to contribution. Further, as a general rule the doctrine of laches will not bar a suit before expiration of the period set forth in the applicable statute of limitations in the absence of special facts demanding extraordinary relief. *See Hughes v. Neely*, 332 S.W.2d 1, 6 (Mo.1960); *Milgram v. Jiffy Equipment Co.*, 362 Mo. 1194, 247 S.W.2d 668, 676–77 (Mo.1952); 27 Am. Jur.2d *Equity* § 160 (1966). While we are not here required to determine the statute of limitations applicable to a separate action for contribution commenced after judgment, the mere fact that we have recognized the right to file such an action demonstrates the need for a limitation on the period of time within which such an action can be filed. In view of the language of § 5(c) of the Uniform Comparative Fault Act and the absence of any limitation within the terms of § 516.120, the question of what statute of limitations will apply to those who choose to pursue contribution in the separate action may well depend on

---

**3.** Whether impleader should be permitted in a case is a matter for the sound discretion of the trial court. *See State ex rel. Green v. Kimberlin*, 517 S.W.2d 124, 126–27 (Mo. banc 1974):

The right to implead is not an absolute right even if the claim asserted is within the scope of Rule 52.11, but is a matter that is discretionary with the court. The "purpose of third party practice is to avoid two actions which should be tried together to save the time and cost of a reduplication of evidence to obtain consistent results from identical or similar evidence and to accomplish ultimate justice for all concerned with economy of litigation and without prejudice to the rights of anoth-

er." [Quoting *State ex rel. Laclede Gas Co. v. Godfrey*, 468 S.W.2d 693, 698 (Mo.App.1971)] ... If the above purposes would not be served by the adjudication of the third-party claim, it is proper for the trial judge to exercise discretion and dismiss the third-party petition [without prejudice].

*Id.* While the trial court retains discretion in ruling on a defendant's motion to implead a third party defendant, "[j]oining all parties to a transaction in a single lawsuit for the comparison of the fault of all concerned can best expedite litigation and relieve the congestion of overcrowded courts." *Gustafson v. Benda*, 661 S.W.2d at 15.

whether the matter is first presented to the Court or the legislature.[4]

The provisional writ is ordered quashed and the cause remanded for proceedings in accordance with this opinion.

HIGGINS, GUNN and DONNELLY, JJ., concur.

RENDLEN, C.J., concurs in result in separate opinion filed and concurs in separate opinion of BLACKMAR, J.

BLACKMAR, J., concurs in result in separate opinion filed and concurs in separate opinion of RENDLEN, C.J.

HOUSER, Senior Justice, concurs in result only, believing that the provisional writ should be quashed as having been improvidently granted, for the reasons stated in Judge BLACKMAR's opinion concurring in result.

BILLINGS, J., not sitting.

RENDLEN, Chief Justice, concurring in result.

Less than eight months ago in *State ex rel. Morasch v. Kimberlin,* 654 S.W.2d 889 (Mo. banc 1983), this Court ruled that prohibition does not lie to prevent a court from proceeding to trial on a claim allegedly barred by the general statute of limitations:

> Where, as here, the statute does not restrict the power of the court but merely sets up a condition precedent to the establishment of the plaintiff's cause of action, we think the violation of the statutory provision constitutes an error of law rather than an excess of jurisdiction.

654 S.W.2d at 892 (quoting *Redlands High School Dist. v. Superior Court,* 20 Cal.2d 348, 125 P.2d 490, 497 (1942)). Without mention of *Morasch,* the majority today retreats from that holding and reaches the merits of a petition to prohibit a court from proceeding to trial on a claim allegedly barred by the general statute of limitations. This result will necessarily frustrate those obliged to follow our lead. *See State ex rel. Farmers Mutual Insurance Co. v. Barker,* 658 S.W.2d 503 (Mo.App.1983) (*Morasch* followed).

If *Morasch* stands for the proposition that we will never review a statute of limitations issue in prohibition, I do not subscribe to such position. Forcing upon a defendant the expense and burdens of trial when the claim is *clearly* barred is unjust and should be prevented. However, this is most certainly not such a case. Plaintiff in the underlying suit claims its fire damage was caused by a defective light fixture manufactured by defendant. Defendant impleaded petitioner on the theory that if defendant is liable to plaintiff, petitioner is liable to defendant because a component of the fixture sold by petitioner was defective and responsible for the blaze. According to the records presented both the main claim and the third party claim are predicated on strict liability in tort. Defendant tells us that its claim is one for contribution under the doctrine elucidated in *Missouri Pacific Railroad Co. v. Whitehead & Kales,* 566 S.W.2d 466 (Mo. banc 1978), but *Whitehead and Kales* involved a claim and attempted interpleader predicated on negligence. In that case, we observed, "[t]he right to non-contractual indemnity presupposes actionable *negligence* of both parties toward a third party." 566 S.W.2d at 468 (emphasis supplied). Apparently no Missouri court has ever determined that the seller of a defective product held strictly liable in tort has a claim for (partial) contribution predicated on strict liability against his supplier. Authorities suggest that if such claim exists, it is one for (full) indemnity not (partial) contribution. *See* Unif. Comparative Fault Act § 2 Commissioner's Comment and *Hales v. Green Colonial, Inc.,* 402 F.Supp. 738 (W.D.Mo.1975) (Missouri courts would hold that seller held strictly liable in tort has cause of action for indemnity against manufacturer of product found to be unreasonably dangerous where seller had no actual knowledge of defect).

**4.** Section 5(c) of the Uniform Act specifically provides: "If a judgment has been rendered, the action for contribution must be commenced within [one year] after the judgment becomes final...."

To determine the time limitation on a claim the existence and nature of which has yet to be established, as the majority does, is simply not warranted given the posture of this case. The statute of limitations issue raised here appears to be one of first impression, which is ill suited for consideration through this extraordinary legal remedy. The issue may be eliminated and at the very least a full and proper record can be developed during trial. Finally, *Simon v. Kansas City Rug Co. v. Servicemaster Service-Opp International Corp.*, 460 S.W.2d 596 (Mo.1970), is persuasive authority for the correctness of respondent's action. In sum, this case presents none of the extraordinary circumstances that have traditionally justified interlocutory review, and I would quash the provisional writ without reaching the merits.

BLACKMAR, Judge, concurring in result.

This case is on all fours with *Simon v. Kansas City Rug Company*, 460 S.W.2d 596 (Mo.1970). The petition declares that the relator was "the original and primary wrongdoer" and that defendant acted "without knowledge of the likelihood of injury, and therefore its conduct was passive and its liability constructive and secondary...." The trial court, in apparently following *Simon*, was not exceeding its jurisdiction, and its decision should not be upset in prohibition. It is not necessary at this point to deal with the effect of *Missouri Pacific Railroad Co. v. Whitehead & Kales Co.*, 566 S.W.2d 466 (Mo. banc 1978) on statutes of limitation.

I am not prepared to say that *Whitehead & Kales* has the effect of applying *Simon* to all claims for contribution or indemnity. Nor would I foreclose ruling on a clear statute of limitations issue in prohibition. Prohibition, however, is not appropriate to review a decision wholly consistent with *Simon* and dealing with only a part of the problem. The parties may of course proceed by way of appeal at an appropriate time, and may seek reconsideration of *Simon*.

The principal opinion goes much further than necessary in expressing views on factual situations not now before the Court. *Whitehead & Kales* was forged by the unanimous action of this Court, "steadfastly consistent with the dictates of our common law tradition and the principles of equity embedded therein...." 566 S.W.2d at 473. I want to retain the freedom to mold the common law with the assistance of principles of equity to the myriad statute of limitations problems which may be presented under *Whitehead & Kales*, as they are presented in proper cases. Those sought to be held as indemnitors or contributors are entitled to equitable consideration, just as persons named as principal defendants are. The Court might well find an obligation to present newly recognized claims promptly. I would not foreclose or even cast doubt upon the availability of a laches defense in such cases. It is not my purpose to express an opinion as to how cases should eventually be decided, but simply to make it clear that I consider the questions open.

Particularly disturbing and unnecessary is the endorsement of the proposition that "the third party's claim arises, and the statute of limitations commences to run, at the time the defendant in the original suit *pays* more than his or her share of the proportionate judgment." (emphasis supplied). The applicable statute, then, is presumably ten years under § 516.110(3), RSMo 1978, for want of any other applicable statute of limitations.[1] If payment is the ultimate triggering event it is not difficult to imagine situations in which the statute would not run for fully 20 years after the accident or injury complained of. I see no reason for the Court to commit itself to a holding of the breadth suggested, or even to give a blanket endorsement to the proposition that "The wording of Rule 52.11(a) clearly contemplates no time limitation upon the right to file the third party pro-

---

**1.** 516.110.–Within ten years:

&ast; &ast; &ast; &ast; &ast; &ast;

(3) Actions for relief, not herein otherwise provided for.

ceeding." We should be free to take note of, and to correct, inequitable situations as presented.

The Court has deviated from the prior law in establishing new actions, not known to the common law. The law is judge made. I do not fault it for this reason; most of our common law is judge made. *See Gustafson v. Benda, supra,* p. 28 (Billings, J., concurring). But I would like to maintain the freedom to consider adjustments and restrictions on newly created actions. The same authority which created the actions is entitled to take steps to ensure just and equitable treatment for all.

Although I did not participate in the decision in *Gustafson v. Benda, supra,* I understood that the Uniform Comparative Fault Act was used to provide minimum guidance in comparative negligence cases, and was not being totally adopted as legislation. I see no warrant for substituting it for our usual statutes of limitation.

Just as every cloud has a silver lining, the majority opinion may have a fortunate byproduct in the demise of the recent rule of *State ex rel. Morasch v. Kimberlin,* 654 S.W.2d 865 (Mo. banc 1983), which holds that the writ of prohibition would be used only for the purpose of ruling on jurisdictional questions, and not for the purpose of furthering interlocutory appeals. I considered that holding unnecessary for the decision of the matter then before the Court, and unwise in its constriction of the Court's power to issue and determine original remedial writs (Mo. Const., Art. V, Sec. 4.1). Here the Court makes use of a prohibition action to announce broad rules of law which the majority considers desirable, even though the trial court had the unquestionable jurisdiction to render the decision which was subjected to our provisional rule. Although I do not agree with the broad pronouncements of the principal opinion, and believe that the case can and should be resolved on much narrower grounds, I note that the writ is now available for the purpose of making legal pronouncements any time a majority of the Court wants to use it for that purpose.

It may be suggested that the bench and the bar are in need of "guidance" in the full implication of *Whitehead & Kales* and *Gustafson.* There are many interesting and important legal questions, in this area and others, which are subject to uncertainty, and it is often tempting to answer them in advance of the need for doing so in the setting of a particular case. But common law courts should strive to adhere to the tradition of the common law, by avoiding overexpansive holdings, and not answering questions which have not been fully briefed and presented to them in an adversary setting.

For the reasons stated, and without joining in the principal opinion, I agree that the provisional rule should be quashed.